IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE CHICKASAW NATION and THE CHOCTAW NATION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05-cv-01524-W |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | ) ) ) | Senior Judge Lee West |
| Defendants. | ) ) | |
| _____ | ) | |

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
FOR PROTECTIVE ORDER QUASHING THE DEPOSITION OF SECRETARY OF
THE INTERIOR SALLY JEWELL

TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 2

    A.   No "exceptional circumstances" justify Secretary Jewell's deposition. ....... 2

        1.   Secretary Jewell's testimony is not essential to obtain relevant, non-privileged information. ....................................................................... 4

        2.   Secretary Jewell's testimony is not essential, because she was not personally involved in and has no personal knowledge of any issue in this litigation. ............................................................................... 9

        3.   Less disruptive forms of discovery are available. ........................... 11

    B.   Testimony of the highest ranking official of a co-equal branch would offend the constitutional mandate of separation of powers. ........................ 13

    C.   Allowing Plaintiffs to depose Secretary Jewell would unnecessarily disrupt the administration of official duties. .......................................................... 15

    D.   Plaintiffs' cross-motion is procedurally and substantively without merit ... 16

III. CONCLUSION .................................................................................................. 16

TABLE OF AUTHORITIES
Federal Cases

*Capitol Vending Corp. v. Baker*,
        36 F.R.D. 45 (D.D.C. 1964) ................................................................15

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena*,
        40 F.R.D. 318 (D.D.C. 1966) ..............................................................7

*Church of Scientology v. IRS*,
        138 F.R.D. 9 (D. Mass. 1990) ............................................................11

*Clinton v. Jones*,
        520 U.S. 681 (1997) ............................................................................12

*Cmty. Fed. Sav. & Loan Ass'n, v. Fed. Home Loan Bank Bd.*,
        96 F.R.D. 619 (D.D.C. 1983) ..............................................................15

*Energy Capital Corp. v. United States*,
        60 Fed. Cl. 315 (2004) .........................................................................10

*Ernest and Mary Hayward Weir Foundations v. United States*,
        508 F.2d 894 (2d Cir. 1974) ................................................................7

*In re Cheney*,
        544 F.3d 311 (D.C. Cir. 2008) ............................................................14

*In re F.D.I.C.*,
        58 F.3d 1055 (5th Cir. 1995) ................................................................4

*In re FDIC*,
        58 F.3d 1055 (5th Cir. 1995) ..............................................................14

*In re Lindsey (Grand Jury Testimony)*,
        148 F.3d 1100 (D.C. Cir. 1998) ..........................................................8

*In re SEC ex rel. Glotzer*,
        374 F.3d 184 (2d Cir. 2004) ..............................................................14

*In re United State (Bernanke)*,
        542 Fed. Appx. 944 (Fed. Cir. 2013) ................................................13

*In re United States (Holder)*,
        197 F.3d 310 (8th Cir. 1999) .......................................................3, 4, 14

*In re United States (Jackson)*,
  624 F.3d 1368 (11th Cir. 2010) ...................................................................13, 14

*In re United States (Kessler)*,
  985 F.2d 510 (11th Cir. 1993) ...........................................................................4, 15

*Nat'l Paint & Coatings Ass'n v. City of Chicago*,
  147 F.R.D. 184 (N.D. Ill. 1993) ...............................................................................7

*NEC Corp. v. United States*,
  151 F.3d 1361 (Fed. Cir. 1998) .............................................................................15

*Nevada v. United States*,
  463 U.S. 110 (1983) .................................................................................................11

*United States v. Hooker Chemicals & Plastics Corp.*
  123 F.R.D. 3 (W.D.N.Y. 1988) ...............................................................................7

*United States v. Jicarilla Apache Nation*,
  131 S.Ct. 2313 (2011) ...........................................................................................6, 8

*United States v. Morgan*,
  313 U.S. 409 (1941) ...................................................................................13, 14, 15

*Warren Bank v. Camp*,
  396 F.2d 52 (6th Cir. 1968) ......................................................................................7

## State Cases

*In re Daisy Mfg. Co., Inc.*,
  17 S.W.3d 654 (Tex. 2000) ......................................................................................6

## Federal Statutes

28 U.S.C. § 516 ...........................................................................................................11

28 U.S.C. § 519 ...........................................................................................................11

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 30 .......................................................................................................12

Fed. R. Civ. P. 33 .......................................................................................................12

I.    <u>INTRODUCTION</u>

      The Supreme Court and virtually every appellate court to consider the question have disapproved of examinations of high-level government officials except in the most extraordinary circumstances.  This heightened test requires that the sought-after testimony be both essential to the case (i.e., relevant and necessary) and unavailable from other less intrusive sources.  Because Plaintiffs fail to make the strong showing needed to justify the deposition of the Secretary of the Interior, S.M.R. Jewell, this Court should grant the United States' motion and quash the Plaintiffs' notice of deposition.

      The claims to be tried by the Court in Phase I of this litigation are limited to the actions of and legal requirements imposed upon the Department of the Interior in the first half of the twentieth century.  Plaintiffs do not argue that Secretary Jewell has personal, firsthand knowledge of these events, nor have they convincingly explained how the Secretary's issuance of a prospective order decades after the period of time at play in this litigation is relevant or necessary.

      Because they cannot demonstrate that Secretary Jewell's testimony is relevant to the claims set for trial, Plaintiffs instead manufacture a series of straw men to divert attention from the fundamental inquiry before the Court.  First, Plaintiffs suggest that this Court should delve into the relationship between Secretary Jewell and her attorneys, the Solicitor of the Department of the Interior and the Attorney General.  Never once, however, do Plaintiffs explain how the relationship between Secretary Jewell and her attorneys could somehow be relevant to the actions of Department of Interior officials in prior centuries.  Plaintiffs are fully entitled to disagree with the positions taken by the

1

opposing parties, but they are not entitled to invade the attorney-client relationship and likely privileged information to acquire testimony that bears no relevance on the issues to be presented at trial.

Next, Plaintiffs repeatedly suggest that Secretary Jewell should be subjected to the same treatment as Chief Pyle and Governor Anoatubby, when no such parity is warranted.  First, Plaintiffs' decision to designate their Chief and Governor as testifying witnesses in this case has no bearing on whether extraordinary circumstances justify the deposition of Secretary Jewell.  Second, Plaintiffs proffer the testimony of Chief Pyle and Governor Anoatubby as witnesses with personal knowledge of events relevant to their case.  Secretary Jewell has no such personal knowledge and has not been identified as a witness by the United States.

Plaintiffs provide no basis for this Court to venture into the Constitutional separation of co-equal branches of government.  Similarly, there is no basis upon which to divert a Cabinet Secretary's attention from her public responsibilities, where a clear demonstration of relevancy is absent.  In short, a protective order quashing the noticed deposition of Secretary Jewell should be entered to prevent this case from veering far off course in the all-important run-up to a trial that is now less than six months away.

II.   ARGUMENT

   A.   No "exceptional circumstances" justify Secretary Jewell's deposition.

Plaintiffs offer no credible grounds, much less "exceptional circumstances," justifying the deposition of the Secretary.  It is axiomatic that there can only be exceptional circumstance if Plaintiffs can "establish at a minimum that [Secretary Jewell]

possess[es] information essential to [their] case which is not obtainable from another source." *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999) (emphasis added). The courts applying this heightened standard have required (1) personal knowledge, (2) of relevant information, (3) that cannot be obtained through other means. As a threshold matter, Plaintiffs' opposition demonstrates that the information sought from Secretary Jewell is not relevant to their claims. They have also failed to demonstrate that Secretary Jewell has unique personal knowledge of facts relevant to this case. And, Plaintiffs have not seriously considered other possible sources for the information.

At the outset, it should be noted that the fact that the Department of Justice has noticed depositions of Chief Pyle and Governor Anoatubby does not somehow render the deposition of Secretary Jewell appropriate. Plaintiffs recently identified Chief Pyle and Governor Anoatubby as individuals possessing "the greatest and most comprehensive knowledge of the control of Plaintiff Chickasaw Nation and or Choctaw Nation by the United States as alleged in Plaintiffs' Third Amended Complaint." Ex. F. Unlike Secretary Jewell, both Governor Anoatubby and Chief Pyle submitted sworn declarations in this case based on their "personal knowledge." Exs. A and B. And unlike Secretary Jewell, Plaintiffs identified both Chief Pyle and Governor Anoatubby as witnesses for the July 2015 trial based on their personal knowledge. ECF No. C. Governor Anoatubby and Chief Pyle verified Plaintiffs' interrogatory responses. Exs. D (Chickasaw Interrogatory Responses) and E (Choctaw Interrogatory Responses). In short, Plaintiffs identified the Governor and Chief as having personal and extensive knowledge of the

facts and claims at issue in this lawsuit.  Secretary Jewell has no such knowledge and Defendants have not suggested otherwise.

        1.    <u>Secretary Jewell's testimony is not essential to obtain relevant, non-privileged information</u>.

Plaintiffs claim that Order 3335 and the Secretary's interpretation of that Order are relevant to this case because the United States' trust responsibilities to Indian Nations is at the "very heart of this case."  Resp. Br. at 7 (citing Third Amended Complaint, ¶¶ 115-153).  This argument is misguided for two reasons.  First, an Order issued decades after the actions and facts relevant to this case cannot now define the statutorily-driven trust duties that existed between 1830 and 1946.  Indeed, by its own terms, Order 3335 cannot plausibly be relevant to this case.  Second, the deliberative process privilege and/or the attorney-client privilege foreclose examination of these topics.

It is necessary that the information Plaintiffs seek from the Secretary not just be relevant, but "essential" to their case.  *Holder,* 197 F.3d at 314 (Plaintiffs must "establish *at a minimum* that [Secretary Jewell possesses] information *essential* to [their] case . . . .") (emphasis added) (citing *In re United States (Kessler),* 985 F.2d 510, 512-13 (11th Cir. 1993), and *In re F.D.I.C.,* 58 F.3d 1055, 1062 (5th Cir. 1995)).  Plaintiffs have not seriously attempted to establish that Secretary Jewell's testimony is "essential."  Resp. Br. at 6-7.  Plaintiffs instead selectively and misleadingly cherry pick language from Order 3335 and launch ad hominem attacks on the United States' lawyers.  This does not satisfy the "essential" standard.

Plaintiffs cite to Order 3335 in an attempt to buttress their arguments regarding the United States' trust responsibilities in the nineteenth and early part of the twentieth centuries.  But this is precisely what the Order does not do.  Order 3335 articulates "scope and limitations," including that it does not create legal rights or standards that affect trust duties that Congress created in the past century.  Ex. G (Order 3335 ¶ 6) (ECF No. 240).  Order 3335 "does not preempt or modify the Department's statutory mission and authorities, ***position in litigation***, applicable privilege, or any professional responsibility obligations of Department employees."  *Id.* ¶ 6(a) (emphasis supplied). The Order unequivocally states that it does not create any legal rights as it "is not intended to, and does not, create any right to administrative or judicial review or any legal right or benefit, substantive or procedural, enforceable by a party against the United States, its agencies, or instrumentalities, its officers or employees, or any other person." *Id.* ¶ 6(f).

Order 3335's aspirational objective to enhance Interior's relationship with Indian nations from August 20, 2014, onward has no bearing on the claims alleged in this case. To that end, a 2014 Secretarial Order articulating guiding principles to promote good relations with Indian nations today cannot now supersede or otherwise define the statutorily-driven trust duties that existed between 1830 and 1946.  Resp. Br. at 7 (citing the Court's April 16, 2014, Order as showing relevance to trust claims, which states: "Phase I [of this litigation] concerns the Nation's trust accounting and trust management claims that pre-date 1946.").

Second, Plaintiffs contend that they must depose Secretary Jewell to assess "whether she is aware of the positions taken by the Department of Justice's attorneys" related to whether the Defendants have a common law accounting duty in this action. Resp. Br. at 16.  Such an inquiry is wholly improper and entirely irrelevant.  Plaintiffs' demand for the Secretary's *opinion* on the conduct of the Department of Justice and its attorneys has no probative value to the claims at issue in this case.  As Plaintiffs' cross-motion makes plain, Plaintiffs seek this deposition because of the ongoing meditation and Plaintiffs' apparent frustration with not having an audience with the decision-makers who agree with Plaintiffs.  But depositions may be used only as a legitimate discovery device, not as a tool for harassment or gamesmanship.  *See In re Daisy Mfg. Co., Inc.*, 17 S.W.3d 654, 660 (Tex. 2000) (holding that the trial court's conclusions—that the deposition of the defendant's CEO in a products liability action was not calculated to lead to discovery of admissible evidence, but was sought for unrelated reasons, including harassment—was supported by evidence, because plaintiff's attorney had stated "I think it will be a tremendous assistance in settling this case").  And Plaintiffs' attacks on the Department of Justice in this action are equally improper.  Plaintiffs take issue with the Department of Justice attorneys for citing controlling Supreme Court precedent—*United States v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2324 (2011) (*Jicarilla*)—in discussing the scope of the trust duty because Plaintiffs perceive a conflict with Order 3335.  There is no conflict.  Order 3335 cites *Jicarilla*, which unlike the Order, is binding in this case.

Plaintiffs claim that the deliberative process privilege is not relevant here because they merely "seek to understand whether the Secretary is aware of and subsequently

6

affirms" the actions of the Department of Justice attorneys that Plaintiffs contend run

afoul of Order 3335.  Resp. Br. at 18.  But even assuming the Order has any relevance to

the actions of counsel in this case (which it does not), the Court and the parties can look

to the text of the Order to determine whether Plaintiffs have raised a colorable claim.

The only reason Plaintiffs could plausibly seek to depose Secretary Jewell is "in order to

probe [her] mind as to exactly why [s]he saw fit to exercise [her] discretion as [s]he did"

(i.e., to attempt to go beyond the Order's text).  *Warren Bank v. Camp*, 396 F.2d 52, 56

(6th Cir. 1968).  This clearly implicates the deliberative or mental process privilege.[1]

The methods by which decisions were reached, the matters considered, the contributing

influences, and the role played by work of others are, unquestionably, matters relating to

mental processes of executive or administrative officers and subordinates.  *See United*

*States v. Hooker Chemicals & Plastics Corp.* 123 F.R.D. 3, 28 (W.D.N.Y. 1988) (quoting

*Carl Zeiss Stiftung v. V.E.B. Carl Zeiss Jena,* 40 F.R.D. 318, 324-25 (D.D.C. 1966), *aff'd*

*per curium,* 384 F.2d 979 (D.C. Cir.)) (elaborating why the mental processes of executive

or administrative officers should not be subject to examination in court proceedings);

*Nat'l Paint & Coatings Ass'n v. City of Chicago,* 147 F.R.D. 184, 185-86 (N.D. Ill. 1993)

---

[1] There are numerous cases which refer to various privileges attendant to the decisional process of agency officials. Some refer to the common law "executive privilege," founded on the executive nature of most agencies, both state and federal. Other cases refer in broader terms to a "governmental privilege" or a "mental process rule."  Regardless of the nomenclature used, the deliberative processes of government officials are traditionally protected against disclosure. *Ernest and Mary Hayward Weir Foundations v. United States,* 508 F.2d 894 (2d Cir. 1974).  Under that logic, heads of government agencies are not normally subject to depositions.  *See id.*

(noting that courts should not probe into the motivations or reasoning of decision makers).

Plaintiffs likewise contend that they do not intend to seek attorney-client privileged communications. Resp. Br. at 19. This argument also misses the mark. Plaintiffs repeatedly and unambiguously state that they want to explore whether the Secretary has been apprised of, and condones, the Defendants' positions in this litigation and in the Court-ordered mediation. *E.g.,* Resp. Br. at 6, 10-11, 13-14, 16, 30. Indeed, Plaintiffs indicate that they want to probe whether "the Department of Justice obtain[ed] any prior authority from [the Secretary] to take positions contrary to [] Order [3335]" and how the Secretary became aware of this lawsuit. *Id.* at 21. While disavowing any desire to seek privileged communications, Plaintiffs plainly admit that they seek to explore communications among the Secretary, Interior attorneys and the Department of Justice about this litigation. Plaintiffs' request to explore communications the Secretary had with counsel should be rejected outright. *See, e.g., Jicarilla*, 131 S. Ct. at 2321 (noting that "the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys"); *In re Lindsey (Grand Jury Testimony)*, 148 F.3d 1100, 1104 (D.C. Cir. 1998) (per curiam) (communications between an agency decision-maker and other agency attorneys fall within the attorney-client privilege).

2.      Secretary Jewell's testimony is not essential, because she was not
        personally involved in and has no personal knowledge of any issue
        in this litigation.

Plaintiffs contend that Secretary Jewell's personal knowledge of Order 3335 constitutes an "exceptional circumstance" because of her "direct, unique and personal knowledge regarding the language in her Order." Resp. Br. at 7. Plaintiffs' arguments are misguided on two grounds. First, Order 3335 does not render Secretary Jewell's testimony essential and relevant to Plaintiffs' accounting and trust management claims, because the order itself is not relevant to those claims. Second, Plaintiffs wrongly assume that the Department of Justice is running afoul of the Secretary's will with respect to the conduct of litigation in this case. For the reasons set forth below, Plaintiffs' arguments fail.

First, Secretary Jewell's deposition cannot possibly be essential or relevant to this matter because Secretary Jewell lacks personal knowledge or involvement in the accounting or management claims Plaintiffs assert. Secretary Jewell has not previously worked as an employee at Interior or in any line of work associated with Plaintiffs' claims. She is not a lawyer and has not worked directly on this litigation. Nor is she conversant on the specific accounting duty owed to Plaintiffs in this case. Plaintiffs do not dispute these facts but rather point to Order 3335 as proof positive that the Secretary has "unique" knowledge about the trust relationship. But the fact that Secretary Jewell signed Order 3335 cannot create personal knowledge where there is none.

At bottom Plaintiffs conflate personal knowledge with opinion testimony. Plaintiffs seek the latter from the Secretary. Resp. Br. at 21. For example, Plaintiffs seek

to ask the Secretary if "the litigation position advocated to the Court by the Department of Justice the same as your position on these issues?" *Id.* Such an inquiry has nothing to do with Plaintiffs' claims in this case. Nor does it explore the Secretary's personal knowledge of the factual bases for those claims.

None of the cases Plaintiffs cite involve the kind of freewheeling inquiry into the opinions of a sitting Cabinet Secretary as Plaintiffs propose here. Plaintiffs contend that *Energy Capital Corp. v. United States*, 60 Fed. Cl. 315, 317-18 (2004), is relevant because Secretary Jewell has "first-hand personal knowledge that no one else has" about whether the Department of Justice's positions are "inconsistent with her Order." Resp. Br. at 16. To be sure, Secretary Jewell is the only person that has "first-hand personal knowledge" of her own opinions—but that is true of every putative witness. Plaintiffs' argument does not establish the Secretary's personal involvement and personal knowledge of the facts giving rise to Plaintiffs' claims. In contrast, in *Energy Capital Corp.,* the court held that plaintiffs were entitled to take the depositions of the *former* Secretary and General Counsel of the Department of Housing and Urban Development, because the subject allegations concerned the conduct of those very officials. So too with the other authorities relied on by Plaintiffs. Resp. Br. at 5 (citing cases). In sum, unlike those rare exceptions to the general rule against the testimony of high-level officials, the personal actions of Secretary Jewell are not at issue in this lawsuit.

Nor is there any merit to Plaintiffs' suggestion that the Department of Justice is improperly "controlling" the litigation or has a "conflicted role in litigating Native American trust matters." Resp. Br. at 8. As background, the Attorney General is charged

with representing the interests of the United States and its agencies in court, 28 U.S.C. §§ 516, 519.  In *Nevada v. United States,* 463 U.S. 110 (1983), the Supreme Court recognized that the government acts in matters affecting Indian tribes in its capacity as a sovereign.  The fact that the United States may face competing interests therefore does not pose a disabling conflict for the government, *id.* at 128, or for the attorneys representing the government.  Plaintiffs' repeated suggestion that the Department of Justice is flouting Interior's Order 3335 completely misunderstands the role of the Executive Branch in defending suits filed against the United States.  But even more importantly, it is not relevant to the claims raised in Plaintiffs' operative complaint.

Without evidence of the Secretary's personal knowledge of the decades-old facts to be addressed at trial—there are simply no exceptional circumstances justifying the deposition of a Cabinet Secretary.  Indeed, even if stripped of the critical position she holds, Plaintiffs could still not meet the standard for forcing any individual lacking personal involvement and knowledge to sit for a deposition.

3.    Less disruptive forms of discovery are available.

Even assuming that the information sought from Secretary Jewell is essential, which it is not, Plaintiffs must also "satisfactorily demonstrate[] that the information sought cannot be gained through an alternative source."  *Church of Scientology v. IRS*, 138 F.R.D. 9, 13 (D. Mass. 1990).  Plaintiffs suggest that they "considered" a proposal that the Secretary answer interrogatories in lieu of sitting for a deposition during the

parties' meet and confer.[2]  Resp. Br. at 23.  Plaintiffs' claim, however, is belied by their assertion at that same meet and confer, that it was essential that they cross-examine the Secretary under oath in person.  Plaintiffs' brief buttresses this point: "the Nations need to directly question Secretary Jewell, a named Defendant, under oath. . . ."  *Id.* at 23.

But, as discussed above, the Secretary has no unique personal knowledge of the facts relevant to this litigation.  Citing the Order's reference to the "highest moral and legal obligations," Plaintiffs nonetheless argue that they are entitled to "sworn testimony."  Resp. Br. at 25.  But there is no such entitlement here where Plaintiffs seek to depose the Secretary of the Department of Interior.[3]  As discussed above, a long line of cases from courts across the county indicate that Plaintiffs have no such right absent exceptional circumstances.  *See* Defs.' Mot. at 11 of 26 (ECF No. 240-1).  Nor does *Clinton v. Jones*, 520 U.S. 681, 691-92 (1997), suggest that only "sworn testimony" of an executive official will suffice.  In *Clinton*, the Supreme Court rejected claims of

---

[2] Answers to any relevant interrogatories directed to Defendants would, of course, be answered "under oath" as required by Fed. R. Civ. P. 33.  When the party is a government agency, those answers may be provided by an officer or agent designated by the agency.  Thus, to the extent any relevant information can be gleaned from Plaintiffs discovery expedition, Defendants' proposal that Plaintiffs submit interrogatories in lieu of a deposition provides a reasonable, less burdensome alternative to obtain sworn evidence.

[3] Plaintiffs' need for this deposition is further undercut by Defendants' significant efforts to comply with their discovery obligations.  Among other things, Defendants have or are in the process of responding to Plaintiffs' numerous discovery requests by producing over 390,000 documents and sitting twelve deponents to respond to the twenty-three compound topics set forth in Plaintiffs' three notices of deposition pursuant to Fed. R. Civ. P. 30(b)(6).  It is also worth noting that the Defendants' Rule 30(b)(6) deponents include the current Director of the Bureau of Indian Affairs and other senior-level officials from the Office of the Special Trustee for American Indians.

12

executive privilege where the actions of the President in his *personal capacity* before he became President were at issue such that the President had unique personal factual knowledge. *Id.* Here, the personal conduct of the Secretary is not at issue. She is sued in her official capacity. Moreover, Secretary Jewell's opinion of the Order does not implicate unique personal factual knowledge as was the case in *Clinton*.

In short, Plaintiffs have not shown, and presumably cannot show, that the information sought can only be obtained by deposing Secretary Jewell.

B.   Testimony of the highest ranking official of a co-equal branch would offend the constitutional mandate of separation of powers.

A long line of authority establishes that Plaintiffs must surmount a high legal hurdle before deposing high ranking officials because of concerns over the separation of powers. *See United States v. Morgan*, 313 U.S. 409, 422 (1941) (citation omitted); *In re United States (Jackson)*, 624 F.3d 1368, 1373-74 (11th Cir. 2010). Plaintiffs do not seriously challenge this fundamental principle but rather argue that their limited questioning of the Secretary would not offend separation of powers concerns. Plaintiffs' assurances are beside the point. Plaintiffs demand that the Court compel the Secretary to attend a deposition on matters that, while germane to the disposition of her official duties, are not relevant to this case. Such a request invariably heightens separation of powers tensions between the Executive and Judicial Branches of our government. *See In re United State (Bernanke),* 542 Fed. Appx. 944, 949 (Fed. Cir. 2013) (unpublished) ("On this record, Starr's efforts to inquire into these issues have all the appearance, and vices, of a fishing expedition rather than an effort to establish legally material facts."). In that

vein, as Plaintiffs acknowledge, courts have routinely granted the extraordinary remedy

of a writ of mandamus so that Cabinet-level officials are not in the quandary of obeying a

court order or risking contempt. *In re SEC ex rel. Glotzer*, 374 F.3d 184, 188 (2d Cir.

2004).

Nor do Plaintiffs seriously challenge that the weight of authority, animated by

separation of powers concerns, has routinely rejected any attempt by a party to depose

high-ranking government officials. *See Jackson,* 624 F.3d at 1374*; In re Cheney,* 544

F.3d 311, 314 (D.C. Cir. 2008); *Holder,* 197 F.3d at 316; *In re FDIC,* 58 F.3d 1055, 1060

(5th Cir. 1995).  Plaintiffs attempt to distract from the well-established and expansive

legal principle set forth by the Supreme Court in *Morgan* by focusing upon minor factual

distinctions in case law applying it. Resp. Br. at 26-27.  Although Plaintiffs note

differences between the present situation and that presented in *Morgan*, where the

Government official performed a quasi-adjudicatory role, *id.*, the Supreme Court in

*Morgan* also based its conclusion upon the bedrock proposition that "the integrity of the

administrative process must be equally respected." 313 U.S. at 422. More fundamentally,

Plaintiffs fail to recognize that, whatever its underlying facts, *Morgan* is the foundation

upon which an overwhelming majority of Federal courts have reaffirmed the time-

honored principle precluding compulsion of high-level official testimony and intrusion

into such officials' "mental processes."  The Supreme Court declined to revisit these

principles, consistently denying petitions for certiorari to review orders barring

depositions of senior Government officials. *E.g., NEC Corp. v. United States*, 151 F.3d

1361, 1375 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 1139 (1999); *In re United States*

14

*(Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993), *cert. denied sub nom. Faloon v. United States*, 510 U.S. 989 (1993).

In accord with this long line of precedent, the Court should grant Defendants' motion for a protective order to insure adherence to established principles of judicial review and inter-branch comity.

C.     Allowing Plaintiffs to depose Secretary Jewell would unnecessarily disrupt the administration of official duties.

Plaintiffs also give short shrift to Defendants' argument that the Court should issue a protective order to the prevent the disruption that invariably would result if high level officials such as Secretary Jewell were subject to deposition in civil actions against their agency. *See Kessler,* 985 F.2d at 512. *Cmty. Fed. Sav. & Loan Ass'n, v. Fed. Home Loan Bank Bd.*, 96 F.R.D. 619, 621 (D.D.C. 1983).   But, time and again, courts have routinely reaffirmed that only exigent circumstances justify allowing the deposition of high-ranking government officials because, in the absence of such a rule, "we would find that heads of government departments and members of the President's Cabinet would be spending their time giving depositions and would have no opportunity to perform their functions." *Capitol Vending Corp. v. Baker*, 36 F.R.D. 45, 46 (D.D.C. 1964).[4]  Plaintiffs' offer to depose the Secretary on multiple days in 10-to-30 minute increments, Resp. Br.

_____

[4] *See Kessler*, 985 F.2d at 510-13 (must have extraordinary circumstances before allowing testimony of Commissioner because otherwise the Commissioner's time would "be monopolized by preparing and testifying in such cases"); *Morgan*, 313 U.S. 409 (holding that left unchecked, high-ranking government officials would be inundated with discovery obligations and litigation-related burdens placed upon them, rendering their time remaining for government service significantly diluted or completely consumed).

15

at 22, perversely assumes that it would be less burdensome for the Secretary to prepare for multiple short depositions or that a 10-minute deposition is even possible given the practical logistics of taking a deposition. Rather, Plaintiffs' proposed "accommodation" underscores the folly of deposing the Secretary on matters that have no relevance to the merits of this accounting action and which are, in effect, intended to probe into privileged matter or to determine the Secretary's personal views on this litigation and the trust duty.

     D.    <u>Plaintiffs' cross-motion is procedurally and substantively without merit</u>.

The United States will respond to Plaintiffs' cross-motion in a separate filing according to this Court's normal scheduling rules for responding to motions. But as concerning the Defendants' instant motion for protective order, Plaintiffs' cross-motion seeks to inject an irrelevant issue. Secretary Jewell does not have authority to settle this case. She has no first-hand knowledge relevant to this case. And, critically, the mediator has not expressed concern that mediation has stalled because Secretary Jewell or different representatives from the Justice Department have not participated directly in the mediation sessions. If the mediator seeks participation from other government officials, the Justice Department will work with the mediator. But it is premature and unnecessary to have this Court enter orders directing the participation of specific government officials in the mediation.

III.    <u>CONCLUSION</u>

To allow Plaintiffs to proceed with a deposition of a Cabinet-level official in a case in which there is no allegation that she has or had any personal knowledge or involvement in the claims at issue would constitute error. For the reasons explained

above, Plaintiffs cannot show that exceptional circumstances exist to justify forcing the

Secretary to submit to a deposition by Plaintiffs on irrelevant and privileged topics.  Even

more importantly, the court should protect the constitutional paradigm of separation of

powers and the conduct of important public business by granting the requested motion for

protective order.

      Dated: February 6, 2015

                                      SANFORD C. COATS
                                      United States Attorney
                                      R.D. EVANS, JR., Louisiana Bar # 20805
                                      Don.Evans@usdoj.gov
                                      Assistant United States Attorney
                                      Western District of Oklahoma
                                      210 Park Avenue, Suite 400
                                      Oklahoma City, OK 73102
                                      Tel:  (405) 553-8700
                                      Fax: (405) 553-8885

                                      JOHN C. CRUDEN
                                      Assistant Attorney General

                                      By   /s/ Marissa Piropato
                                      MARISSA A. PIROPATO, NY BAR #4323242
                                      Marissa.Piropato@usdoj.gov
                                      ANTHONY P. HOANG, FL Bar #0798193
                                      Anthony.Hoang@usdoj.gov
                                      MATTHEW MARINELLI, IL Bar #6277967
                                      Matthew.Marinelli@usdoj.gov
                                      JESSICA HELD, DC Bar #975864
                                      Jessica.Held@usdoj.gov
                                      United States Department of Justice
                                      Environment and Natural Resources Division
                                      Natural Resources Section
                                      P.O. Box 7611
                                      Washington, D.C.  20044-7611
                                      Tel: (202) 305-0241
                                      Tel: (202) 305-0239
                                      Tel: (202) 305-0575

Tel: (202) 305-0470
Fax: (202) 305-0506

Attorneys for Defendants

OF COUNSEL:

CHARLES R. BABST, JR.
Office of the Field Solicitor
United States Department of the Interior
Tulsa, OK 74145

KENNETH DALTON
MICHAEL BIANCO
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

REBECCA SALTIEL
THOMAS KEARNS
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C.  20227

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 6, 2015, I transmitted the foregoing

Defendants' Memorandum in Support of its Motion for Protective Order Quashing the

Deposition of Secretary of the Interior Sally Jewell by electronic and United States mail

to the following ECF registrants representing Plaintiffs:

       Jason Bjorn Aamodt
       Louis W. Bullock
       Kerry L. Pedigo
       Bob Rabon
       Dallas L. Dale Strimple
       C. Cary Patterson
       Bradley Beckworth
       Michael Burrage

                        /s/ *Marissa Piropato*
                        MARISSA PIROPATO